## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01734-DDD-NYW

MELANIE TOLBERT

     Plaintiff,

v.

HIGH NOON PRODUCTIONS, LLC, et al.

     Defendants.

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND, THIRD, FOURTH AND FIFTH CAUSES OF ACTION

---

Under Fed. R. Civ. P. Rule 12(b)(6), defendant High Noon Productions, LLC ("High Noon")[1] respectfully moves to dismiss the ancillary state law claims of plaintiff Melanie Tolbert ("Plaintiff")[2] as alleged in the Second through Fifth causes of action in her Complaint, because they are barred by Copyright Act preemption and otherwise fail to plausibly allege cognizable claims for relief.  In support of this Motion, High Noon states as follows:

---

[1] Captioned-defendant High Noon Entertainment is a registered trade name of defendant High Noon, and is not an entity capable of being sued separate and apart from High Noon itself. *Frison v. Ryan Homes*, 2004 WL 3327904, at *3 (D. Md. Oct. 29, 2004) ("Trade names are not jural persons and cannot sue or be sued.").

[2] Certificate of Conferral pursuant to DDD Civ. P.S. III(D)(1): Counsel for High Noon conferred with counsel for Plaintiff regarding this Motion, but Plaintiff opposes the relief sought herein.

## <u>INTRODUCTION AND BACKGROUND</u>

In her Complaint, Plaintiff alleges that High Noon's production of the "Good Bones" television show has infringed her alleged copyright in a "teaser" video ("Teaser") depicting her concept for a mother-daughter home renovation TV series.  Compl. ¶¶ 15-18.  This saga began as a copyright infringement and unjust enrichment action against both High Noon and Discovery Inc., the network telecasting "Good Bones," over two years ago in the Northern District of Alabama.  *Tolbert v. High Noon Productions, LLC et al.*, No. 4:18-cv-00680-KOB (N.D. Ala., filed May 1, 2018).  In January 2019 and again in November 2019, the complaint and amended complaint, respectively, were dismissed as to High Noon in the Alabama action for lack of personal jurisdiction.  *Id.*, 2019 WL 127363, at *4-5 (N.D. Ala. Jan. 8, 2019); *id.*, 2019 WL 6311433 (N.D. Ala. Nov. 25, 2019).  Setting aside the deficiencies of Plaintiff's copyright infringement claim, by which she improperly claims ownership of "ideas" (which are expressly excluded from copyright protection under 17 U.S.C. § 102(b)), her state law claims are pleaded as mere legal conclusions that are deficient and preempted under the Copyright Act.

Specifically, Plaintiff's claims for trade secret misappropriation, conversion, unjust enrichment, and punitive damages are preempted under Section 301(a) of the Copyright Act. Section 301(a) mandates that state-law claims regarding copyrightable works may not be prosecuted if the gravamen of those claims is equivalent to a copyright infringement claim.  *See, e.g.*, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1146 (10th Cir. 2009) (unfair competition claim held preempted by the Copyright Act); *BC Tech., Inc. v. Ensil Int'l Corp.*, 464 F. App'x 689, 697-98 (10th Cir. 2012) (theft charge preempted); *Ehat v. Tanner*, 780 F.2d 876, 877-79 (10th Cir. 1985) (unfair competition and unjust enrichment claims preempted); *Architects*

*Collective v. Gardner Tanenbaum Grp., L.L.C.*, 2010 WL 2721401, at *7-8 (W.D. Okla. July 6, 2010) (conversion claim preempted); *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 963 (D. Kan. 2004) (trade secret claim preempted). Indeed, Plaintiff is well aware of this principle, as her "unjust enrichment" claim in Alabama on the same theory proffered here has already been dismissed, **with prejudice**, by the court in *Tolbert*, 2019 WL 127363, at *7-9.

Because the Second, Third, Fourth and Fifth claims against High Noon fail to state claims for relief and are barred by preemption, they should be dismissed with prejudice.

## STANDARD UNDER RULE 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court is required to accept well-pled factual allegations, it is not required to accept conclusory, speculative or unsupported allegations. *See Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1271 (D. Colo. 2004).

## ARGUMENT

Here, Plaintiff's conclusory (and repetitive) state law claims are all based on allegations that purportedly: (a) Plaintiff's Teaser was "transmitted to/conveyed to/provided to/accessed" by High Noon (Compl. ¶¶ 53 & 24, 26, 28, 30, 31 ); (b) High Noon "exploitat[ed] … Plaintiff's work/material/trade secret" by "us[ing] and implement[ing] Plaintiff's original, unique and

creative protected show details, show concepts, teaser video … without [her] knowledge, consent, permission and authority, and, without due and lawful credit and compensation to Plaintiff" (*id.* ¶¶ 65, 68, 69, 72, 78, 81, 83, 95, 107, 121, 139, 141, 142); and (c) High Noon "misappropriated [her Teaser] … without the opportunity for Plaintiff to agree to confer the benefit of consent to Defendants to copy, use, take, implement, produce and/or create derivative works" (*id.* ¶¶ 64, 67, 68, 78, 81, 90, 95, 104, 106, 107, 125, 128, 146, 153).  These allegations scarcely even recite the threadbare legal elements of Plaintiff's state law claims, but at bottom seek relief for the alleged copying of the Teaser to create "Good Bones" as a purported derivative work – and thus are quintessentially preempted by Section 301(a) the Copyright Act.

### A.    Elements of the State Law Causes of Action

#### 1.    Second Cause of Action: Misappropriation of Trade Secret

To state a claim for misappropriation of trade secrets, Plaintiff must plausibly allege: "(1) [she] possessed a valid trade secret; (2) the trade secret was disclosed or used without consent; and (3) [High Noon] knew, or should have known, that the trade secret was acquired by improper means."  *Wright Med. Tech., Inc. v. Paragon 28, Inc.*, 2019 WL 4751807, at *3 (D. Colo. Sept. 30, 2019).  Colorado law defines a trade secret to be "the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information … or other information relating to any business or profession **which is secret** and of value," and the "owner [of an alleged trade secret] **must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner** to have access thereto for limited purposes."  C.R.S. § 7-74-102(4) (emphases added).

Here, Plaintiff's Complaint does not plausibly allege facts establishing that the Teaser video was a "trade secret" under Colorado law or that High Noon "knew or should have known" as much.  Rather, Plaintiff's factual allegations concede that she shared the Teaser with many third-party agents, producers, and executives, without entering into any non-disclosure agreements ("NDAs") or similar measures to maintain the "secrecy" of the Teaser.  *See*, *e.g.*, Compl. ¶¶ 23, 25-27, 29, 31; *Johnson v. Am. Honda Motor Co. Inc.*, 2016 WL 3078995, at *3 (D. Colo. May 18, 2016) (dismissing trade secret claim where the complaint revealed that plaintiff "did not take reasonable efforts to maintain the secrecy of his [alleged trade secret] … through, for example, a non-disclosure agreement"); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 2013 WL 1231875, at *8 (D. Colo. Mar. 27, 2013) (dismissing claim where plaintiff alleged no "reasonable efforts" to maintain secrecy); *accord Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information … his property right is extinguished.").  Indeed, Plaintiff's allegations demonstrate that she actually intended to share her Teaser widely in the hope that doing so would garner interest in her idea.[3]  Thus, Plaintiff's allegations belie her claim that the content of the Teaser was a "trade secret."

Likewise, while Plaintiff pleads on information and belief that High Noon became aware of the Teaser, she alleges no facts plausibly supporting the notion that High Noon acquired the

---

[3] It is no accident that Plaintiff has not and cannot allege that she conditioned her distribution of the Teaser to third-parties on their consent to NDAs or other restrictions.  Rather, as Plaintiff admits, she created and distributed the Teaser to "induce … producers/network to discuss and produce the mother-daughter renovation TV show with her."  Compl. ¶¶ 17-19.

Teaser through improper means.  *E.g.*, *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1174 (D. Colo. 2018) (dismissing claim where complaint that "fails to plausibly allege that [defendants] obtained trade secrets by improper means through misrepresentations"); *Johnson v. Am. Honda Motor Co. Inc.*, 2016 WL 3078995, at *4 (D. Colo. May 18, 2016) ("[Plaintiff] acknowledges that he sent his design to Honda unsolicited.  As such, he cannot also contend that Honda acquired his design by improper means."); *Ciena Commc'ns, Inc. v. Nachazel*, 2010 WL 3489915, at *4 (D. Colo. Aug. 31, 2010) (same).  Given Plaintiff's allegations that she broadly distributed the Teaser without NDAs or other safeguards, Plaintiff has not and cannot plausibly allege that High Noon acquired the Teaser in an "improper" way.

Because Plaintiff's trade secret claim is supported by nothing more than conclusory and threadbare recitals of the elements of the cause of action and is contradicted by Plaintiff's fact allegations that she distributed the Teaser to third parties without NDAs or other restrictions, it fails to state a claim for relief.  Further, stripped of Plaintiff's unsupported legal conclusions, the gist of the second claim is that High Noon allegedly made an unauthorized derivative work based on the Teaser.  As discussed below, this claim is preempted by the Copyright Act.

### 2.     *Third Cause of Action: Conversion*

To state a claim for conversion, Plaintiff must plausibly allege that "(i) [High Noon] exercised dominion or control over property; (ii) that property belonged to [Plaintiff]; (iii) [High Noon's] exercise of control was unauthorized; (iv) [Plaintiff] demanded return of the property; and (v) [High Noon] refused to return it."  *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1181 (D. Colo. 2019).  Here, High Noon is not factually alleged to have "exercised control" over the Teaser as an item of physical property, and Plaintiff has not pleaded that she

6

has demanded the "return" of such physical property.  Rather, this claim too is factually based on the alleged copying of the Teaser, and thus is preempted by the Copyright Act.  *Compare* Compl. ¶¶ 118-134 *with id.* ¶¶ 101, 103, 106-108, 113-114; *see infra.*

### 3.     *Fourth Cause of Action: Unjust Enrichment*

To state a claim for unjust enrichment, Plaintiff must plausibly allege "(1) [High Noon] received a benefit (2) at the [P]laintiff's expense (3) under circumstances that would make it unjust for [High Noon] to retain the benefit without commensurate compensation."  *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1178 (D. Colo. 2019).  Plaintiff yet again relies on virtually identical threadbare legal allegations for this claim.  *See* Compl. ¶¶ 136, 138- 140. Moreover, **this claim was previously dismissed with prejudice on preemption grounds in the parallel Alabama action**.  *Tolbert*, 2019 WL 127363, at *7-8.[4]  Thus, this claim is barred by collateral estoppel and preemption.  *Gass v. United States*, 2000 WL 506960, at *2 (D. Colo. Mar. 1, 2000) ("collateral estoppel applies to identical issues raised in successive suits, whether they be addressed in the same claims or not"), *aff'd*, 216 F.3d 1087 (10th Cir. 2000); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990); 18-132 MOORE'S FEDERAL PRACTICE – CIVIL § 132.02[4][b][ii] (3d ed. 2013).

---

[4] The elements of an unjust enrichment claim under Alabama law, requiring allegations that the (1) defendant knowingly accepted or retained benefit (2) provided by another (3) who had reasonable expectation of compensation, *see Portofino Seaport Village, LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008), are functionally identical to Colorado's enumeration of the claim.

    **4.**    ***Fifth Cause of Action: Punitive Damages***

Finally, Plaintiff's Fifth cause of action for "punitive damages" is not a proper claim at all, but rather a form of potential relief under certain tort claims.  *See Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 213 (Colo. 1984) ("punitive damages . . . is not a separate and distinct cause of action. Rather, it is auxiliary to an underlying claim for actual damages."); *Kirk v. The Denver Pub. Co.*, 818 P.2d 262, 265 (Colo. 1991) (exemplary damages are a type of monetary remedy for a civil wrong, not a separate cause of action).  However, the Copyright Act does not authorize awards of punitive damages (*Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983)), and all of Plaintiff's state law claims on which punitive damages could be awarded are preempted.  Thus, Plaintiff's punitive damages claim is likewise preempted and must be dismissed.

### B.    Plaintiff's State-Law Claims Are Preempted by the Copyright Act

Section 301(a) of the Copyright Act provides, in pertinent part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, . . . are governed exclusively by this title. . . . [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

*R.W. Beck, Inc.*, 577 F.3d at 1146 (10th Cir. 2009).  In enacting Section 301, Congress explicitly preempted the field of state law claims seeking to vindicate rights equivalent to the Copyright Act.  *See, e.g., Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740 (1989) (ruling that the Copyright Act creates uniform law "by broadly pre-empting state statutory and common-law copyright regulation").  As the Tenth Circuit recognized in *Ehat v. Tanner*:

> The intention of section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works coming within the scope of the Federal copyright law. The declaration of this

principle in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively, and to avoid the development of any vague borderline areas between State and Federal Protection.

780 F.2d at 879 (quoting H.R. REP. NO. 94-1476, at 130 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5659, 5746). Copyright preemption applies when (1) the work is within the scope of the "subject matter of copyright" as specified in 17 U.S.C. §§ 102 and 103, such as the audio-visual Teaser here, and (2) when the rights asserted under state law are "equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *R.W. Beck, Inc.*, 577 F.3d at 1146; *Ehat*, 780 F.2d at 878; *see also, e.g.*, *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997).

With respect to the first prong of the preemption analysis, although the Copyright Act does not protect ideas, *see* 17 U.S.C. § 102(b), a claim based on unauthorized use of "ideas" may still be preempted because the scope of Copyright Act preemption is broader than the ambit of its protection. If a plaintiff asserts a claim concerning a work that falls within the subject matter of copyright, and if the claim is based on unauthorized copying or otherwise asserts rights equivalent to those under copyright, that claim is preempted. *E.g.*, *Ehat*, 780 F.2d at 878 (holding preemption can bar claims arising from works "notwithstanding the material could not be copyrighted."); *R.W. Beck, Inc.*, 577 F.3d at 1146-47 ("Section 301 preemption bars state law . . . claims with respect to uncopyrightable as well as copyrightable elements [of the work at issue]." (quoting *Nat'l Basketball Ass'n*, 105 F.3d at 849-50)); *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979 (9th Cir. 2011) (en banc) ("For preemption purposes, ideas and concepts that are fixed in a tangible medium fall within the scope of copyright."); *United*

*States ex rel. Berge v. Bd. of Trs.*, 104 F.3d 1453, 1463 (4th Cir. 1997) ("the shadow actually cast by the [Copyright] Act's preemption is notably broader than the wing of its protection").

Under the second prong, a state-law claim is preempted unless it includes an "extra element" that makes it "qualitatively different from a claim of copyright infringement." *R.W. Beck, Inc.*, 577 F.3d at 1147 (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 307 (2d Cir. 2004)); *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1199 n.2 (10th Cir. 2005) (noting that a state-law cause of action only survives preemption if it "requires an extra element, beyond mere copying, preparation of derivative works, performance, distribution or display" (quotation omitted)), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Nat'l Basketball Ass'n*, 105 F.3d at 850 (holding that the extra element must be something in addition "'to the acts of reproduction, performance, distribution or display.'" (quotation omitted)).

Here, Plaintiff's allegations fall squarely within both prongs of the preemption analysis. First, all of Plaintiff's "state law" causes of action arise from the Teaser video – a work clearly within the "subject matter of copyright." *See* 17 U.S.C. § 102(a) (works of authorship protected by copyright include literary, dramatic and motion picture or other audiovisual works).

Second, Plaintiff's allegations in support of the Second through Fifth claims are all predicated on the alleged unauthorized copying of the Teaser. Plaintiff has alleged no extra element **qualitatively** distinguishing the purported rights at issue from those conferred, if at all, by copyright. In particular, Plaintiff contends:

- "[A]t all relevant times herein mentioned … Defendants' exploitation of Plaintiff's work/material/trade secret was made without Plaintiff's knowledge or consent and constitutes a brazen violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501." Compl. ¶ 65.

10

- "Defendants knew or should have known of the writing, creation and production of Defendants' "Good Bones", and that it contained, took, used and implemented Plaintiff's original, unique and creative protected show details, show concepts, teaser video and work titled, "Like Mother, Like Daughter Renovations" without Plaintiff's knowledge, consent, permission and authority …." *Id.* ¶ 69.

- "Defendants wrote, created, produced, cleared, approved, released, aired, televised, promoted, marketed, and continue to do so to present date, their 'Good Bones' in a total exclusionary fashion, at the expense of Plaintiff, to the Defendants' **unjust enrichment**, and, contrary to Plaintiff['s] … exclusive rights to reproduce and distribute her copyrighted work/show/show details/show content/show elements to the public and/or to authorize derivative works under copyright law …." *Id.* ¶ 74 (emphasis added); *cf. e.g.*, *id.* ¶¶ 136-139 (repeating same "copyright" based allegations with respect to unjust enrichment claim).

- "Defendants knew or should have known that Defendants 'Good Bones' contained, took, used and implemented Plaintiff's original, unique and creative protected world material/work/show/show details/show content/show elements/**trade secret/**teaser video without Plaintiff's knowledge, consent, permission and authority, and, without due and lawful credit and compensation to Plaintiff … for same, and, knew or should have known of the substantial similarity between their 'Good bones' and Plaintiff's work/material/work/show/show details/show content/show elements/**trade secret**." *Id.* ¶ 79 (emphasis added); *cf. e.g.*, *id.* ¶¶ 101, 102, 107 (repeating same "copyright" based allegations with respect to trade secret claim).

- "Plaintiff's **proprietary work product/teaser video/show/show details/show content/ideas/work/show elements/protected work/copyrighted materials/trade secrets** … has been and continues to be wrongfully possessed, taken, usurped, used, **misappropriated** and **converted** by Defendants to Defendants' benefit and to Plaintiff's detriment herein." *Id.* ¶ 128 (emphasis added) & *id.* ¶¶ 118-125 (repeating conclusory allegations with respect to conversion claim).

Under these allegations, each of Plaintiff's state law claims seeks redress, at bottom, for High Noon purportedly creating "Good Bones" as an allegedly derivative work of the Teaser, and then retaining the benefits without authorization, payment or credit to Plaintiff. Such claims encompass precisely the same rights protected by copyright. Plaintiff has failed to plausibly

11

plead any extra element for any of these state law causes of action that would avoid preemption. *See*, *e.g.*, *R.W. Beck*, 577 F.3d at 1147; *Nat'l Basketball Ass'n*, 105 F.3d at 851.

Turning first to the trade secret claim, sometimes such a cause of action can escape preemption if a "breach of trust" is alleged sufficiently – as when a defendant allegedly obtained confidential material by improper means.  *See*, *e.g.*, *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 847-48 (10th Cir. 1993).  But here Plaintiff's conclusory allegations as to this element are contradicted by her failure to plausibly allege any NDAs or other reasonable steps to preserve the confidentiality of the Teaser or that High Noon acquired it by wrongful means.  Thus, Plaintiff's "Trade Secrets Act claim is not distinguishable in any qualitative way from [her] copyright infringement claim."  *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943, 963 (D. Kan. 2004) (dismissing trade secret case and distinguishing *Gates Rubber*); *Relational Design & Technology, Inc. v. Data Team Corp.*, 1992 WL 97799, at *2 (D. Kan. April 16, 1992) (finding preemption where "plaintiff has pleaded that one act constituted both misappropriation of trade secrets and copyright infringement"); *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1194–95 (C.D. Cal. 2001) (granting motion to dismiss trade secret claim based on copyright preemption and lack of allegations supporting secrecy); *Designs Art v. Nat'l Football League Props., Inc.*, 2000 WL 1919787, at *3 (S.D. Cal. Nov. 27, 2000) (granting motion to dismiss trade secret claim based on copyright preemption).

Likewise, because Plaintiff's conversion claim is based on the purported copying of the Teaser, and not for any deprivation of physical property, it is likewise preempted.  *E.g.*, *Ehat*, 780 F.2d at 877-879 (10th Cir. 1985) (claim preempted where "Plaintiff did not allege a state law claim of conversion to recover for the physical deprivation of his notes.  Instead, he sought to

recover for damage flowing from their reproduction and distribution"); *BC Tech., Inc. v. Ensil Int'l Corp.,* 464 F. App'x 689, 698 (10th Cir. 2012) (claim for theft preempted); *Architects Collective v. Gardner Tanenbaum Grp., LLC*, 2010 WL 2721401, at *7–8 (W.D. Okla. July 6, 2010) (same); *see Berge*, 104 F.3d at 1463 (4th Cir. 1997); *Harper & Row Publishers v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983) (holding conversion claim seeking "control over reproduction and derivative use of copyrighted material … is necessarily preempted"), *rev'd on other grounds*, 471 U.S. 539 (1988); *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (same); *accord Idema*, 162 F. Supp. 2d at 1193 (C.D. Cal. 2001); 1 Nimmer, Nimmer on Copyright, § 1.01[B][1][i].

Plaintiff's unjust enrichment claim is also preempted because she is collaterally estopped, *supra*, and under basic principles of preemption. *Builder MT LLC v. Zybertech Const. Software Servs., LTD*, 2008 WL 4724146, at *5 (D. Colo. Oct. 24, 2008) ("All courts considering the issue … have held the 'enrichment' element of an unjust enrichment claim is not sufficiently distinct from the underlying copying to make an unjust enrichment claim qualitatively different from a copyright infringement claim." (citing cases)); *MDM Grp. Assocs., Inc. v. ResortQuest Int'l, Inc.*, 2007 WL 2909408, at *9 (D. Colo. Oct. 1, 2007) (same); *R.W. Beck*, 577 F.3d at 1149 (affirming dismissal of unfair competition claim as preempted); *Ehat*, 780 F.2d at 877-79 (same); *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003) ("where the unjust enrichment arises from defendants' unauthorized use of a copyrighted work, such an extra element does not qualitatively change the rights at issue . . . and does not avoid preemption.").

Finally, Plaintiff's punitive damages claim is preempted because it is not an independent cause of action, punitive damages are not available under the Copyright Act, and all of Plaintiff's state law claims on which punitive damages could be awarded are deficient and preempted.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss, as a matter of law and with prejudice, Plaintiff's Second through Fifth causes of action.


Dated: August 11, 2020
        Denver, Colorado

Respectfully submitted,

FOX ROTHSCHILD LLP


By:   *Michael Beylkin*
Michael Beylkin
1225 17th Street, Suite 2200
Denver, CO 80202
Tel. (303) 292-1200
Fax. (303) 292-1300
mbeylkin@foxrothschild.com


David Aronoff
Fox Rothschild LLP
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
(310) 228-2916 - direct
(310) 556-9828 - fax
daronoff@foxrothschild.com

*Attorneys for High Noon Productions, LLC*

### **TYPE-VOLUME CERTIFICATION**

1.      I hereby certify that this document complies with the word limit set forth in DDD Civ. P.S. III(A)(1) because, excluding parts of the document exempted under the practice standards, this document contains 3999 words.

2.      I hereby certify that this document complies with the typeface and type-style requirements set forth in DDD Civ. P.S. I(D) because this document has been prepared in a proportionally spaced, serif font typeface using Microsoft Word 2016 in 12-point Times New Roman.

**CERTIFICATE OF SERVICE**

I hereby certify that on this  11th  day of  August  2020, a true and correct copy of the

foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND, THIRD,**

**FOURTH AND FIFTH CAUSES OF ACTION** was filed with the Court through the ECF

system, which generates an electronic notice of service by email delivery to all counsel of record.


*s/ Michael Beylkin*
Michael Beylkin