# In the United States District Court for the District of Colorado
## Judge Daniel D. Domenico

Case No. 1:20-cv-01734-DDD-NYW

**Melanie Tolbert**,

    Plaintiff,

v.

**High Noon Productions LLC**,

    Defendant.

## Order

Plaintiff Melanie Tolbert is an actress who returned home to Alabama in 2014 to care for her mother. (Doc. 59 at 1.) Ms. Tolbert and her mom like watching HGTV and in 2014 realized the channel was missing a home-renovation show starring a mother-daughter duo like them. (*Id.*) Ms. Tolbert and her mother like home-renovation projects, too, and so Ms. Tolbert decided to create a teaser video to pitch a home-renovation television show she called *Like Mother, Like Daughter* to her industry contacts. (*Id.* at 2.) According to Ms. Tolbert, she created the teaser in July 2014 and then sent various producers associated with HGTV and Discovery a teaser for the show, but none of them agreed to produce it. (*Id.*) Ms. Tolbert left her rejection at that until 2017 when she saw a new mother-daughter renovation show on HGTV: *Good Bones*. (*Id.*) *Good Bones*, according to Ms. Tolbert, bore significant similarities to *Like Mother, Like Daughter* (namely that the two shows star a mother-daughter pair that do home renovations). (*Id.*) Ms. Tolbert registered the copyright for her show. (*Id.*) Ms. Tolbert then filed this

suit alleging a claim for copyright infringement, and four state-law claims against High Noon Production LLC, the producer of *Good Bones*. The core of her complaint is that High Noon had access to the teaser for *Like Mother, Like Daughter* and copied it to create *Good Bones*. The Court dismissed the state-law claims on High Noon's motion because they were not well-pleaded and they were preempted by the Copyright Act. (*Id.* at 4–9.)

Now before the Court are eight motions: (1) Defendant High Noon Production LLC's motion for summary judgment on Ms. Tolbert's last-remaining claim for copyright infringement (Doc. 41); (2) High Noon's motion for Rule 11 sanctions (Doc. 61); (3) High Noon's Motion to exclude the expert testimony of James Boyd (Doc. 91); (4) High Noon's motion to exclude the expert testimony of Kenneth Lehrer (Doc. 103); (5) Ms. Tolbert's motion to exclude the expert testimony of Lars Schou (Doc. 102); (6) Ms. Tolbert's motion to restrict access to Doc. 77-11 (Doc. 78); (7) High Noon's motion to restrict access Doc. 77-11 (Doc. 82); and (8) Ms. Tolbert's motion to file a surreply to High Noon's motion for summary judgment (Doc. 111). For the following reasons, the Court **grants** High Noon's motion for summary judgment; **grants** the parties' motions to restrict; **denies** High Noon's motion for sanctions; **denies as moot** the parties *Daubert* motions; and **denies** Ms. Tolbert's motion to file a surreply.

### DISCUSSION

I. **High Noon's Motion for Summary Judgment (Doc. 41)**

A. **Standard of Review**

Federal Rule of Civil Procedure 56 requires the Court to grant a motion for summary judgment "if but only if the evidence reveals no genuine issue of material fact and the movant is entitled to judgment as

a matter of law." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1190 (10th Cir. 2009). The Court views "the facts and all reasonable inferences those facts support in the light most favorable" to Plaintiffs. *Id.* at 1189–90. "An issue of material fact is genuine only if the nonmovant presents facts such that a reasonable factfinder could find in favor of the nonmovant." *S.E.C. v. Thompson*, 732 F.3d 1151, 1157 (10th Cir. 2013) (alteration adopted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. Proc. 56(e)(2).

## B. Factual Basis for High Noon's Motion

High Noon's motion for summary judgment on Ms. Tolbert's remaining claim for copyright infringement is premised on three factual assertions.

First, High Noon points to testimony from employees of High Noon and HGTV, the network that airs *Good Bones*, that High Noon never had access to the teaser for *Like Mother, Like Daughter* in 2013, 2014, or 2015 when *Good Bones* was developed and premiered. Tina Seiler, a casting producer at High Noon, testified that in November 2013 she began searching for talent for a new home-renovation series with a family dynamic along the lines of the shows *Fixer Upper* and *Property Brothers*. (Doc. 44 at ¶¶ 7–8.) She came across a home-renovation business in Indianapolis called "Two Chicks and a Hammer" run by a mother-daughter team, Karen Leine and Mina Starsiak. (*Id.* at ¶ 8.) Ms. Seiler emailed Ms. Leine and Ms. Starsiak, and they began discussions concerning creation of a mother-daughter renovation show. (*Id.* at ¶¶ 9–10.) Ms. Seiler along with an executive at High Noon, Katie Neff, asked Ms. Leine and Ms. Starsiak to create a "sizzle reel" that would serve as

3

the cornerstone for pitching a show starring Ms. Leine and Ms. Starsiak. (*Id.* at ¶¶ 11–13.) By February 2014, High Noon had completed a cut of the sizzle reel for the show Ms. Neff dubbed *Two Chicks and a Hammer*, and High Noon formally pitched the show to an executive at HGTV in early March 2014. (Doc. 42 at ¶ 12; Doc. 43 at ¶ 6.) A month later, HGTV ordered production of a pilot episode of the show. (Doc. 42 at ¶¶ 13–16.) High Noon developed the show from April 2014 until its debut on HGTV on May 4, 2015. (Doc. 43 at ¶¶ 9, 14.) Based on the popularity of the pilot, HGTV ordered a ten-episode run of the show, which was retitled *Good Bones*. (Doc. 43 at ¶¶ 14–15.) Ms. Neff, Ms. Seiler, and Glenna Sayles, who serves as a producer for High Noon, all testified that they had never seen and were not aware of Ms. Tolbert or Ms. Tolbert's teaser when they created *Good Bones*; indeed, they say they weren't aware of the teaser until Ms. Tolbert filed this suit. (Doc. 42 at ¶ 23; Doc. 44 at ¶ 20; Doc. 45 at ¶ 11.) Ms. Starsiak and Ms. Laine likewise testified that they weren't aware of Ms. Tolbert or her teaser until she filed this lawsuit. (Doc. 46 at ¶ 16; Doc. 47 at ¶ 16.)

Ms. Tolbert disputes this but offers nearly no facts to support that disputation. (*See* Doc. 77 at 3–4.) The only contrary evidence she presents is testimony of two experts that many of the emails attached to the declarations of the High Noon and HGTV employees that High Noon submitted with its motion have been modified and exhibit inconsistencies that suggest they were doctored. (*See* Docs. 77-7, 77-8.) High Noon responds that the pdf copies of the emails reviewed by Ms. Tolbert's experts were not doctored and that High Noon has subsequently produced native copies of the emails so Ms. Tolbert can verify their authenticity. Neither expert opines on the validity of the native copies. This dispute, however, is immaterial. The emails are an independent basis to corroborate the testimony in the declarations, but

4

the declarations stand on their own merits.[1] Ms. Tolbert has offered no reason to doubt the factual accuracy of the declarations, even if there is some reason to doubt the underlying emails. Stripping away this dispute over the emails, all that remains is Ms. Tolbert's bare assertions that she disputes the facts testified to by High Noon's witnesses. But bare assertions of dispute, without factual support, are inadequate to overcome a well-supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, (1986) (to overcome a properly supported motion for summary judgment "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" (citations omitted)). The Court thus accepts this evidence as true.

Second, High Noon points to evidence set forth above that the sizzle reel for *Two Chicks and a Hammer* was finished by February 2014 and submitted to HGTV in March 2014, four months before Ms. Tolbert created her teaser. High Noon concludes that it was thus factually impossible for it to copy Ms. Tolbert's work. Ms. Tolbert's primary response is that the pilot for *Two Chicks and a Hammer* wasn't filmed until the fall of 2014, providing High Noon ample time to copy her teaser. She also points to some inconsistencies between the timelines presented by High Noon's witnesses as evidence that the testimony is unbelievable. But other than that, she offers no factual basis to doubt that High Noon created the sizzle reel for *Two Chicks* by February 2014, that HGTV had ordered a pilot a month later, and that it wasn't until four months later that she created her teaser for *Like Mother Like Daughter*.

Third, High Noon points to evidence that Ms. Tolbert's teaser relies

---

[1] Ms. Tolbert also argues that the emails are inadmissible hearsay. But for the same reason, the Court needn't decide this question.

entirely on stock, cliched material that is common to most if not all home-renovation shows. Ms. Sayles testified, for example, that Ms. Tolbert's teaser reflects "the standard stock treatment of elements that are unoriginal to Ms. Tolbert, and can be found in many prior home-renovation reality television series, such as 'Fixer Upper.'" (Doc. 45 at ¶ 12.) The cliched themes exhibited by the teaser, according to Ms. Sayles, include:

- scenes depicting the stars of a home renovation series sitting or standing separately or together in a house under renovation;

- showing the stars promoting the title of their series, depicting them entering a bathroom decorated with flowers, portraying them celebrating a success with a high five;

- filming them in scenes that feature cute dogs;

- showing them at a table looking at design plans;

- filming them in front of a wall that is being repaired; and

- showing them adding or retaining an original design feature of a home as a finishing touch to a completed remodel.

(*Id.*) These scenes, testified Ms. Sayles, all "naturally flow from the core idea of a home renovation show revolving around the interactions of two on-screen personalities." (*Id.*) Ms. Laine and Ms. Starsiak likewise testified that the aspects of the show that Ms. Tolbert says were taken from her teaser largely flow from the interpersonal dynamics between them and the dictates of the subject matter of the show (*e.g.*, blocking and shot framing). (Doc. 47 at ¶¶ 14–15.)

Ms. Tolbert responds that *Good Bones* shares many elements of her

teaser. Along with her response brief, Ms. Tolbert submitted an exhibit with shot-by-shot comparisons of her teaser and scenes from *Good Bones*. (Doc. 77-10.) Among other things, she highlights scenes showing both mother-daughter duos standing back-to-back smiling at the camera, similarities in wardrobe and blocking, similar blocking when each pair does a "bathroom reveal," similar high-five scenes, images of each duos' dogs that are framed similarly, and others. (*Id.* at 1–3.) Ms. Tolbert also relies on a television-production expert, James Boyd, that in his opinion there are too many similarities between *Good Bones* and Ms. Tolbert's teaser for *Good Bones* to be an independent creation. (Doc. 77-9.)

### C. Ms. Tolbert's Claim for Copyright Infringement

Under the Copyright Act, "a plaintiff must prove two elements to establish copyright infringement: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). The parties agree that Ms. Tolbert has a valid copyright for *Like Mother, Like Daughter*. Their dispute instead centers on the copying element.

The copying element has two sub-components. A plaintiff must first establish that the defendant in fact copied plaintiff's work. *Id.* If that is satisfied, the plaintiff must next show a "substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Id.*

Ms. Tolbert's claim for copyright infringement falters on the requirement of copying in fact. To copy a work, the defendant must have first had access to it. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d

7

1171, 1178 (10th Cir. 2009). Ms. Tolbert has not alleged that she sent her teaser to High Noon, HGTV, or any of their agents or employees. Ms. Tolbert avers instead that she sent her teaser to twenty show producers in the home-renovation genre during the summer of 2014. (Doc. 77 at 7–8.) From that assertion, she argues she's raised a genuine dispute of material fact that High Noon had access to her teaser. But she has adduced no connection between those twenty producers and High Noon other than the fact that they work in the same industry dominated by HGTV.

She is right that a plaintiff can establish access by inference, "showing that the defendant had a reasonable opportunity to view or an opportunity to copy the allegedly infringed work." *La Resolana Architects*, 555 F.3d at 1178. And although access can be established by this kind of circumstantial evidence, neither "speculation or conjecture," nor a "bare possibility that the defendant had access," is enough to carry the plaintiff's burden. *Id.*

That is all there is here. Ms. Tolbert has adduced no evidence that any employee or representative of High Noon had a reasonable opportunity to view or otherwise access her teaser for *Like Mother Like Daughter* until she filed this suit. Indeed, the parties don't dispute that High Noon submitted its sizzle reel for the show months before Ms. Tolbert created her teaser. Ms. Tolbert's contends that High Noon had access through the producers she sent her teaser to in 2014. While it is possible to establish access on an intermediary theory like the one posited by Ms. Tolbert, one leading treatise explains that it is "seldom successful in practice." William F. Patry, Patry on Copyright § 9:29 (2021). This is because "inserting a third party into the equation makes the likelihood of access even more remote since an additional obstacle is placed in the chain of evidence necessary to establish . . . that the

8

defendant copied from the plaintiff." *Id.* Courts in the Ninth Circuit, for example, have ruled that, to prove access through an intermediary, "the intermediary must have been either (1) a supervisor with responsibility for the defendant's project; (2) a part of the same work unit as the copier; or (3) someone who contributed creative ideas or material to the defendant's work." *Tedesco v. Pepe*, No. CV 11-6203-JFW, 2012 WL 13012419, at *11 (C.D. Cal. July 17, 2012). To succeed on an intermediary theory of access, then, there must be a "nexus between the defendant and the individual possessing knowledge of the plaintiff's work." *Id.*

Ms. Tolbert has not produced evidence that would support finding that nexus in this case. There is no evidence that any of the twenty producers who received the teaser, for example, "contributed creative ideas or materials to defendant's work." *Tedesco*, 2012 WL 13012419, at *11. Ms. Tolbert at best rests her case for access on a "devious chain of acquaintances." *See Alexander v. Irving Tr. Co.*, 132 F. Supp. 364, 367 (S.D.N.Y. 1955), *aff'd*, 228 F.2d 221 (2d Cir. 1955). She asserts, for example, that because High Noon had produced shows for HGTV in the past, and because she shared it with other third-party production companies who also produced shows for HGTV, High Noon had access. (Doc. 77 at 9.) But undergirding this theory is no actual evidence that any of the third-party producers passed on the idea to anyone at HGTV, let alone an HGTV executive who contributed to *Good Bones*.

Ms. Tolbert's argument essentially relies on the same alleged similarity between *Good Bones* and her teaser to establish both infringement and to support an inference of access. But that would collapse the two sub-components into one, since any time there is

substantial similarity to a plaintiff's prior work,[2] the inference theory Ms. Tolbert relies on thus falls into the "bare possibility" category of evidence insufficient to prove access.[3]

Summary judgment in favor of High Noon is proper on this basis alone, so the Court need not rule on High Noon's alternative arguments that *Good Bones* was prior in time to *Like Mother, Like Daughter* and that there is no evidence of substantial similarity between the two shows. Since the parties' motions to exclude expert testimony relate to those alternative arguments, the Court need not rule on them and thus denies them as moot. The Court will, however, grant the parties motion to restrict access to Document 77-1 for good cause shown.

## II. Ms. Tolbert's Motion to File a Surreply (Doc. 111)

A party may be given leave to file a surreply when the movant raises new arguments or relies on new evidence in their reply brief. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). Yet the new arguments or new evidence must be material to the outcome of the motion at issue. *Id.* If they are not, the court is within its discretion to deny leave. *Id.*

Ms. Tolbert argues that she should be permitted to address allegedly new arguments raised by High Noon in its reply brief. But none of those arguments are material to the outcome of the Court's ruling that High

---

[2] For purposes of resolving the access issue, the Court assumes without deciding that this is so here.

[3] Ms. Tolbert also appears to argue that because High Noon has not submitted testimony from every person employed by High Noon in 2014, High Noon has failed to establish lack of access. (Doc. 77 at 4.) But this argument reverses the burden of proof. It is Ms. Tolbert's burden to prove access. *La Resolana*, 555 F.3d at 1178. And High Noon has produced evidence sufficient for a jury to find lack of access.

Noon did not have access to Ms. Tolbert's teaser during the relevant time period. The allegedly new arguments instead relate to the timeline for discovery of the stars of *Good Bones*, the authenticity of the emails appended to High Noon's declarations, and the lack of originality of Ms. Tolbert's teaser. (Doc. 111 at 3–8.) Not one of these allegedly new arguments would change the outcome of High Noon's motion, so there is no need for a surreply. The Court denies the motion.

### III. High Noon's Motion for Rule 11 Sanctions (Doc. 61)

Federal Rule of Civil Procedure 11(b) says that:

> by presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

The standard imposed by Rule 11(b)(1)–(3) is objective reasonableness— "whether a reasonable attorney admitted to practice before the district court would file such a document." *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988). "If after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under" Rule 11(c). *Id.* (cleaned up). But Rule 11 imposes a relatively high

bar to sanctions: "our adversary system expects lawyers to zealously represent their clients, [so] the Rule 11 standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)).

High Noon moves for sanctions under for violation of Rule 11(b)(1)–(3) arguing that Ms. Tolbert's suit was legally and factually frivolous from the outset, asserted to exact a settlement.[4] High Noon's motion largely reiterates the arguments High Noon made in its motion to dismiss and motion to summary judgment. High Noon argues that a reasonable fact investigation would have revealed that the sizzle reel for *Good Bones* was completed before Ms. Tolbert's teaser for *Like Mother, Like Daughter* and that there is nothing unique about Ms. Tolbert's teaser. And High Noon argues that Ms. Tolbert's state-law claims were not warranted by law.

As this order and that on High Noon's motion to dismiss make clear, the Court agrees with High Noon that Ms. Tolbert's claims fail as a matter of law. But not every claim that fails is frivolous, and in the Court's view, the claims here weren't frivolous. No doubt this sort of they-stole-my-show claim can be abused. But while there is not enough in the record to support the inferences and conclusions necessary for Ms. Tolbert to prevail, there is enough that a reasonable attorney could press them in good faith. Without discovery, for example, it's unclear how Ms. Tolbert would have known when the sizzle reel for *Good Bones* was completed. And even so, Ms. Tolbert has a colorable argument that High

---

[4] High Noon gave notice of its motion to Ms. Tolbert more than 21 days in advance of filing it as required by Rule 11(c)(2). (Doc. 61-1.)

Noon could have copied her teaser in the period between completion of the sizzle reel and production of the pilot. Ms. Tolbert similarly has a colorable argument that there are enough similarities between her teaser and *Good Bones* that might give rise to a claim for copyright infringement. And while she failed to adequately plead most of her state-law claims, these claims were easily dispatched by High Noon and represent that common, but generally not sanctionable, method of pleading "known colloquially as throw-as-much-mud-against-the-wall-as-you-can-and-hope-some-of-it-sticks." *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1158 (10th Cir. 1991) ("As long tenured appellate judges we have seen hundreds of examples similar to the pleadings in the instant case."). The Court denies High Noon's motion for sanctions.

## CONCLUSION

For the foregoing reasons, it is **ordered** that:

High Noon's motion for summary judgment (Doc. 41) is **granted**;

High Noon's motion for sanctions (Doc. 61) is **denied**;

High Noon's motion to exclude the expert testimony of James Boyd (Doc. 91) is **denied as moot**;

Ms. Tolbert's motion to exclude the expert testimony of Lars Schou (Doc. 102) is **denied as moot**;

High Noon's motion to exclude the expert testimony of Kenneth Lehrer (Doc. 103) is **denied as moot**; and

Ms. Tolbert's motion to file a surreply is **denied**.

It is **further ordered** that the parties' motions to restrict (Docs. 78, 82) are **granted** for good cause shown. The clerk is directed to keep Doc. 77-11 at a Level 1 restriction. The clerks is **further directed** to enter judgment in favor of High Noon and close the case.

Dated: June 29, 2021.

By the Court:

_____
Daniel D. Domenico
United States District Judge